UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

CARLOS M. RUIZ,

    Plaintiff,

        v.

THOMAS J. VILSACK, in his official
capacity as Secretary of the United States
Department of Agriculture,

    Defendant.

Civil Action No. 10-0291 (JDB)

## MEMORANDUM OPINION

Plaintiff Carlos M. Ruiz ("plaintiff"), proceeding pro se, brings this action under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., alleging that the U.S. Department of Agriculture ("USDA") discriminated against him on the basis of his Hispanic national origin while he was employed as a Computer Assistant at the USDA's International Institute of Tropical Forestry in San Juan, Puerto Rico. Presently before the Court is defendant's motion to dismiss plaintiff's complaint or, in the alternative, for summary judgment, or for transfer to the United States District Court for the District of Puerto Rico. In his motion, defendant argues that (1) plaintiff failed to exhaust his administrative remedies as to certain claims; (2) plaintiff failed to timely file his action within ninety (90) days of receiving his right-to-sue letter from the Equal Employment Opportunity Commission ("EEOC"); and (3) venue is improper in the District of Columbia. For the reasons set forth below, the Court will grant defendant's motion to dismiss for failure to comply with the 90-day statute of limitations imposed by 42 U.S.C. § 2000e-5(f)(1).

**BACKGROUND**

In May 2002, plaintiff began working as a Computer Assistant at the International Institute of Tropical Forestry ("IITF") in San Juan, Puerto Rico. Compl. ¶ 1. Plaintiff alleges that from August 2002 until his departure from the IITF in August 2005, he was subjected to "constant harassment, hostile work conditions and discrimination." Id. ¶ 2.[1] Specifically, he claims that his Caucasian supervisor, Lynda Lynch, "constantly interfered" with his attempts to complete his work, as she demanded that he perform his "website-manager duties" in a manner that was inconsistent with the regulations mandated by the Chief of the U.S. Forest Service. Id. According to plaintiff, Lynch accused him of "not knowing what [he] was doing," id. ¶ 6, called him a "bureaucrat" in an insulting manner, and told him that "she did not have time for [his] games," id. ¶ 11. Lynch subsequently removed plaintiff's website managerial duties -- allegedly "without justification," see id. ¶ 6 -- and hired a Caucasian woman to replace plaintiff as the IITF website manager, id. ¶ 13. Once he was no longer responsible for maintaining the IITF website, plaintiff's job included only "minimal computer support duties," which caused his position to be at risk during the agency reorganization. See id. ¶¶ 14-15.

In November 2003, plaintiff complained to Ariel Lugo, Director of IITF, and Tito Santiago, IITF's Human Resources Officer, about Lynch's alleged "discriminatory actions and unfair practices." Id. ¶ 14. On June 3, 2005, plaintiff filed a formal complaint with the USDA

---

[1] In his complaint, plaintiff does not specify the class-based impetus for the alleged discrimination that he suffered. For purposes of this motion, however, the Court will assume that plaintiff has alleged discrimination on the basis of his Hispanic national origin. See, e.g., Def.'s Mot. to Dismiss [Docket Entry 3] ("Def.'s Mot."), Ex. 1 ("USDA Compl.") at 1 (accepting and referring for investigation plaintiff's claim that he was discriminated against on the basis of his Hispanic national origin).

Office of Civil Rights, alleging that he had been discriminated against on account of his Hispanic national origin. See USDA Compl. at 1. Once he filed his complaint, plaintiff claims that he was retaliated against by Lugo and Santiago, who accused him of having "sabotag[ed]" the IITF website and told him that he had a "bad attitude." See Compl. ¶¶ 16-17. Three days after filing his complaint, plaintiff was reassigned to another office. See USDA Compl. at 1. Then, on August 17, 2005 -- shortly before plaintiff's official departure from IITF -- plaintiff found a "counseling" memorandum on his desk-chair, allegedly drafted by Santiago, which criticized plaintiff's work performance and accused him of "manipulating [his] leave to milk the institute for their [sic] money." Compl. ¶ 18; see also Def.'s Mot., Ex. 2 ("Ruiz Letter") at 1.[2] Plaintiff was so upset that the memorandum had been left in a public place where his colleagues could read it that he allegedly suffered an anxiety attack, which required emergency medical care. Compl. ¶ 18.

After this incident, plaintiff submitted an amended complaint to the USDA Office of Civil Rights. See USDA Am. Compl. at 1. The USDA consolidated plaintiff's two complaints on September 30, 2005, and explained that it would investigate (1) whether plaintiff was subject to discrimination based on his Hispanic national origin when he was reassigned on June 6, 2005; and (2) whether he was subject to discrimination based on his Hispanic national origin when he received the counseling memo on August 17, 2005. Id. The USDA subsequently issued a final decision denying plaintiff's request for relief, which plaintiff appealed to the EEOC in October 2008. See Pl.'s Opp. to Def.'s Mot. to Dismiss [Docket Entry 5] ("Pl.'s Opp.") at 3. The EEOC

---

[2] Although plaintiff's complaint states that this event occurred on August 17, 2009, see Compl. ¶ 18, the record indicates that this incident actually took place on August 17, 2005, see Def.'s Mot., Ex. 3 ("USDA Am. Compl.") at 1; see also Ruiz Letter at 1.

affirmed the agency's decision, and plaintiff requested reconsideration of the EEOC's decision. See id. On June 19, 2009, the EEOC denied plaintiff's request for reconsideration, and notified plaintiff that he had 90 days from his receipt of the decision to file a civil action against the Secretary of the Department of Agriculture. See Compl., Ex. 1 ("EEOC Decision") at 1-2; see also Def.'s Mot., Ex. 4 (same) at 1-2. Plaintiff's complaint does not specify the date on which he received the EEOC decision denying his request for reconsideration (the "right-to-sue letter"). However, the certificate of mailing attached to the EEOC decision states that "the Commission will presume that this decision was received within five (5) calendar days after it was mailed." See EEOC Decision at 3.

On September 16, 2009, plaintiff submitted an Application to Proceed Without Prepaying Fees or Costs (an application to proceed in forma pauperis or an "IFP application") to this Court, and he attached his complaint to the application. See Pl.'s Opp. at 3-4; see also Compl., Ex. 2; Def.'s Mot., Ex. 5 (same). On October 5, 2009, the Court denied plaintiff's request to proceed in forma pauperis, and explained to plaintiff that "[a]s a result of the Judge's ruling, your case has not been filed with our Court and is being returned to you at this time." Compl., Ex. 2; Def.'s Mot., Ex. 6 (same). More than four months later, plaintiff paid the requisite filing fee and filed his complaint, which was docketed by the Clerk of the Court on February 24, 2010. Plaintiff claims that his delay in filing after the Court's denial of his IFP application was due to the fact that he was "saving the money to be able to pay the court fees." See Pl.'s Opp. at 5. He further alleges that he consulted the local rules, but that he "could not find a reference to a time limit as to when or how to file the case after a request to proceed in forma pauperis is denied." Id. at 4.

**DISCUSSION**

Title VII requires that a plaintiff file a civil action within 90 days of receiving notice from the EEOC of his right to sue. See 42 U.S.C. § 2000e-5 (f)(1). The 90-day statutory period is not a jurisdictional prerequisite to filing suit, but rather operates as a statute of limitations, and is thus an affirmative defense that can be raised in a pre-answer dispositive motion. See Smith-Haynie v. Dist. of Columbia, 155 F.3d 575, 577-79 (D.C. Cir. 1998). Here, the EEOC issued its right-to-sue letter on June 19, 2009, see EEOC Decision at 2, but plaintiff's complaint does not specify when he received the letter. Where a plaintiff fails to plead the date that he received the right-to-sue letter, the court "must fix a presumptive date of receipt for purposes of determining whether Plaintiff complied with the ninety day filing requirement." Anderson v. Local 201 Reinforcing Rodmen, 886 F. Supp. 94, 97 (D.D.C. 1995). Courts generally assume that the final EEOC decision was mailed on the same day that it was issued, see id., and that the plaintiff received the decision either three or five days after it was mailed. See, e.g., Baldwin Cnty. Welcome Ctr. v. Brown, 466 U.S. 147, 148 n.1 (1984) (finding that the "presumed date of receipt" was three days after the EEOC right-to-sue letter was issued); Smith-Haynie, 155 F.3d at 578 n.3 (applying Baldwin's three-day rule to a plaintiff's receipt of a right-to-sue letter); Anderson, 886 F. Supp. at 97 (noting that "[c]ourts are divided as to the presumptive date of a right-to-sue letter," but that it is either three or five days after the letter's issuance).

The Court will apply the more generous five-day presumption in this case, given that the certificate of mailing accompanying plaintiff's right-to-sue letter specified the presumptive date of receipt as five days after the decision was mailed. See EEOC Decision at 3; see also Washington v. White, 231 F. Supp. 2d 71, 75 (D.D.C. 2002) (applying the five-day

presumption where the certificate of mailing stated that the EEOC "will presume that [its] decision was received within five (5) calendar days after it was mailed"). The Court will therefore assume that plaintiff received the EEOC's final decision denying his request for reconsideration on June 24, 2009. Applying the 90-day statute of limitations from that date, plaintiff was required to file this civil action no later than September 22, 2009.

Defendant argues that plaintiff's complaint must be dismissed because he did not file suit until February 24, 2010 -- 245 days after receiving notice from the EEOC of his right to sue. See Def.'s Mem. in Supp. of Def.'s Mot. to Dismiss ("Def.'s Mem.") at 11. Plaintiff counters that he did, in fact, file suit within the statutory period, because he attached his complaint to his IFP application, which he submitted to the Clerk of the Court on September 16, 2009 -- six days prior to the expiration of the 90-day statute of limitations. See Pl.'s Opp. at 3-4.

Several courts have addressed whether a complaint is "deemed 'filed' upon presentation to the court clerk when accompanied by an IFP motion, so that the formal filing 'relates back' . . . to the 'lodging' of the complaint with the clerk." See Jarrett v. US Sprint Comm'cns Co., 22 F.3d 256, 259 (10th Cir. 1994); Williams-Guice v. Bd. of Educ. of Chi., 45 F.3d 161, 164-65 (7th Cir. 1995); Truitt v. Cnty. of Wayne, 148 F.3d 644, 647-48 (6th Cir. 1998). Thus far, the Tenth, Seventh, and Sixth Circuits have all held that where a complaint is filed with an IFP application, and that application is ultimately denied, the subsequent filing of the complaint with the filing fee does not "relate back" to the date of the initial filing for statute of limitations purposes. See Jarrett, 22 F.3d at 259-60; Williams-Guice, 45 F.3d at 164-65; Truitt, 148 F. 3d at 647-48. Rather, "the lodging of a complaint by a person who is not entitled to proceed IFP suspends the period of limitations, which begins once again when the judge decides that payment is essential."

Williams-Guice, 45 F.3d at 164 (emphasis added). In other words, the 90-day statute of limitations is equitably tolled while the IFP application is pending, "but only during that time." Jarrett, 22 F.3d at 260. Hence, as Judge Easterbrook explained for a Seventh Circuit panel, once the court denies the IFP application, the clock resumes ticking, and "the would-be plaintiff must act with dispatch." Williams-Guice, 45 F.3d at 165.

Following the Tenth, Seventh, and Sixth Circuits, judges on this Court have also held that the filing of a complaint attached to an IFP application "is insufficient to commence the action and provide notice to the defendant for purposes of the 90-day requirement." Okereh v. Winter, 600 F. Supp. 2d 139, 142 (D.D.C. 2009), *rev'd and remanded on other grounds sub nom.* Okereh v. Mabus, 625 F.3d 21 (D.C. Cir. 2010); see also Amiri v. Stoladi Prop. Group, 407 F. Supp. 2d 119, 124 (D.D.C. 2005) (explaining that "[t]he Clerk of the Court will not accept a complaint for filing that is not accompanied by a filing fee until the Court has granted a petition for leave to proceed in forma pauperis"). Instead, the filing of a complaint along with an IFP application merely "tolls the ninety-day period of limitations contained in the right to sue letter" during the Court's review of the IFP application. Guillen v. The Nat'l Grange, 955 F. Supp. 144, 145 (D.D.C. 1997); see also Okereh, 600 F. Supp. 2d at 141 (noting that the 90-day requirement is "subject to equitable tolling . . . when the Court is reviewing IFP petitions"); Amiri, 407 F. Supp. 2d at 124 (explaining that the "90-day period is tolled between the time a complaint and an application to proceed *in forma pauperis* are received by the Court and the time the Court rules on the application"); Washington, 231 F. Supp. 2d at 75 (citing the "substantial body of case law holding that the ninety day period is tolled between the time a complaint and an application to proceed *in forma pauperis* are received by the Court, and the time the Court rules on the

application"). This rule protects the interests of both the plaintiff and the defendant, since "the plaintiff remains entitled to litigate even if the district judge concludes that he is not entitled to proceed IFP," while the defendant "gets timely notice - for the plaintiff must pay the docket fee within the remainder of the period of limitations." Williams-Guice, 45 F.3d at 165.

Here, plaintiff filed his IFP application on September 16, 2009, and the Court denied his request to proceed in forma pauperis on October 5, 2009. See Compl., Exs. 1-2; Def.'s Mot., Exs. 5-6 (same). Courts have not been entirely consistent as to whether the statute of limitations is equitably tolled only from the time that the IFP application is filed until the time that the Court rules on the application, or whether it remains tolled until the plaintiff receives notice of the Court's decision. See, e.g., Amiri, 407 F. Supp. 2d at 124 (emphasis added) (explaining that tolling continues until "the time the Court rules on the application"); Washington, 231 F. Supp. 2d at 75 (same); Okereh, 600 F. Supp. 2d at 142 (stating that "[e]quitable tolling applies between the day [the plaintiff] filed his IFP application . . . and the day he received the Court's denial"); Williams-Guice, 45 F.3d at 165 (acknowledging the possibility that "the time remains in suspension for a reasonable time . . . after the district court's order" denying the IFP application, but declining to decide the tolling end-date, since the plaintiff's complaint was untimely under either possible date).

This Court need not resolve this issue here, because plaintiff's complaint is untimely under either mode of analysis. Assuming that receipt is required, and applying the more generous five-day presumption, plaintiff is presumed to have received notice of the Court's denial of his IFP application five days after its issuance, i.e., on October 10, 2009. Plaintiff filed his IFP application and initial complaint when only six days remained in the 90-day statutory

period. Therefore, in light of the tolled statute of limitations, plaintiff -- at the very latest -- was bound to commence this action by October 16, 2009 (six days after his presumed receipt of the Court's denial of his IFP application). But plaintiff did not file suit until February 24, 2010 -- 131 days after the statute of limitations had expired, taking into account the 24-day period in which the statute of limitations was tolled (from September 16, 2009 to October 10, 2009).

Plaintiff has explained that he filed suit more than four months after the denial of his request to proceed in forma pauperis because he was "saving the money to be able to pay the court fees," and that, as a pro se litigant, he did not understand the effect of the denial of his IFP application on the 90-day statute of limitations. See Pl.'s Opp. at 4-5. This Court is not unsympathetic to plaintiff's situation, but "[e]ven uncounseled litigants must act within the time provided by statutes and rules." Williams-Guice, 45 F.3d at 164. Because "[p]rocedural requirements established by Congress for gaining access to the federal courts are not to be disregarded by courts out of a vague sympathy for particular litigants," Baldwin, 466 U.S. at 152, courts have strictly construed the 90-day statute of limitations in Title VII cases, even where the plaintiff is proceeding pro se. See, e.g., Smith v. Dalton, 971 F. Supp. 1, 2 (D.D.C. 1997) (dismissing action by pro se litigant who filed suit 91 days after receiving the EEOC's final decision denying his request for reconsideration); Anderson, 886 F. Supp. at 97 (dismissing plaintiff's suit as untimely where it was filed 97 days after issuance of the EEOC right-to-sue letter, and emphasizing that plaintiff's status as "a *pro se* litigant does not render him immune from the ninety-day requirement").

Plaintiff was clearly informed that he had 90 days to sue from the date that he received the final EEOC decision, and he decided to submit his IFP application with his complaint only

six days prior to the 90-day filing deadline.  When plaintiff's IFP application was denied on October 5, 2009, his complaint was returned to him, and he was instructed that his case had not yet been filed with the Court.  <u>See</u> Compl., Ex. 2; Def.'s Mot., Ex. 6 (same).  Plaintiff then waited more than four months to pay the filing fee and initiate this action.  Because plaintiff failed to pay the filing fee within 90 days of receiving the right-to-sue letter -- even taking equitable tolling into account -- he failed to file his complaint within the time allowed by 42 U.S.C. § 2000e-5 (f)(1).  Accordingly, his complaint must be dismissed.

## CONCLUSION

For the foregoing reasons, defendant's motion to dismiss will be granted.  A separate order has been posted on this date.

/s/
JOHN D. BATES
United States District Judge

Dated: <u>February 9, 2011</u>